in Chicago, New York. Good morning. Thank you, Your Honor. Your Honor's counsel, may it please the court. Plaintiff's substantial rights were significantly impacted here by erroneous evidentiary rulings at trial and a new trial should be ordered. This case is a civil tort case, yet it quickly became predominated by criminal acts of the deceased driver, Jimmy Malone. The predomination occurred because defendant was allowed to raise, very late in the case, a contributory negligence defense against the plaintiffs, all three of whom were passengers in a vehicle that was controlled by Jimmy Malone. So we don't dispute that Defendant Ewing was certainly entitled to present evidence of contributory negligence if it could defend him against the state law, willful and wanton, and negligence claims. But what would that kind of evidence look like? What is contributory negligence? It's the same elements that would be required to prove negligence. So you're looking at state law elements of duty and breach to start with. So that would ask the question, when did these plaintiffs, when did a duty arise for them to start taking action, protect their physical well-being? There was plenty of evidence from Cokes and Stevenson. Ronald can't testify to his mindset, but Cokes and Stevenson testified they had no idea what Jimmy Malone was up to in the Tinley Park parking lot. They had no idea that something bad was really happening until they were pulled over by the ISP troopers and then Jimmy Malone took off and started the ISP chase. That's when they knew their physical bodies were in danger. So the next question would be, in a duty analysis and a breach analysis, what could those plaintiffs have done at that point to protect their own bodies? There's nothing they could have reasonably done. Their options were try to wrestle control of the vehicle from Jimmy Malone or jump out of the car. And as the dash cam video showed, they actually did try to get out of the car. Ronald's passenger door, the rear passenger door, opened at one point when the car was racing through the streets of Chicago. In an alley, his rear passenger door opened. Trooper Walker shouted, bailing, bailing, thinking Ronald was jumping out of the car to save his own life. But it was a very dangerous situation. If Ronald had jumped out of the car, he probably would have been immediately run over by Trooper Walker. So recognizing the danger, Ronald closed the door and remained in the car and the three plaintiffs' only options at that point were to wait until this chase ended. Unfortunately for everyone involved, the chase ended in defendant Ewing racing in from Chicago, basically T-boning the car, having no idea where they were, not slowing down when he crossed through an intersection, blew a stop sign, didn't look right and left, and crashed into this vehicle, killing Jimmy Malone and Ronald Errington. So what were the options? What was the duty and breach analysis that was reasonable under the facts here? Those are the kind of facts that the jury should have heard about contributory negligence. But what did they hear about contributory negligence instead? They heard about Jimmy Malone's actions in the Tinley Park parking lot. Those actions had nothing to do with the plaintiff's ability to protect their bodies once at the relevant time, which is once the ISP chase started. So this sounds like a jury argument rather than an argument to the court about the admissibility of evidence. What is the legal error the district court committed? Thank you, Your Honor. So the legal error is we haven't even raised a manifest weight argument because we're not disputing that based on the evidence the jury saw, they ruled against the manifest weight of the evidence. We are raising three evidentiary rulings. One is the predominant one that hijacks this entire case was that the joint enterprise doctrine and theory was allowed in. Yes, we know that. What is the legal error the district court committed in permitting the evidence to be admitted? It allowed highly prejudicial and irrelevant evidence. Most evidence against one side is prejudicial. We're here to talk law. That's what I'm encouraging you to do. Thank you, Your Honor. So the issue is it was a legal doctrine on a defense that's been essentially abolished in Illinois. The Illinois Supreme Court has almost abolished the concept of imputed negligence except in the concept of master-servant principal-agent theories. Here, to get around that, defendant presented this joint enterprise doctrine and the legal error we are asserting is not only that an Illinois court would not even have allowed this doctrine to proceed in a case such as this, but that the district court judge altered the elements. Look, you need to tell us what rule of law would have prevented an Illinois court from admitting this kind of evidence. It's not enough just to say an Illinois court wouldn't have done it. That may be your bottom line. You need to present legal reasoning. That's what I'm trying to get across. Well, Your Honor, it began, as often happens, with the pleadings. The district court judge allowed the defendants to add this defense late in the case after discovery had closed. That was erroneous. That was an abuse of discretion. You need to present a legal argument and not just tell us your bottom line. It's the last time I'll say that. Well, the evidence was irrelevant. It violates federal rules of evidence because it was irrelevant to the doctrine of contributory negligence that is recognized by the state law that applied here. That's the gist of our argument. It was completely irrelevant and highly prejudicial. It's prejudice is truly what made it erroneous. It painted these three plaintiffs who are passengers in a vehicle as criminals. So it should have been precluded. It was an abuse of discretion. It wasn't appropriate to the defense. It wasn't relevant to a defense of contributory negligence. And it was highly inflammatory, highly prejudicial. Are defendants right that the jury could have considered other ways in which plaintiffs were contributory negligent aside from a joint enterprise theory? Well, Your Honor, I guess that goes to what I said in my opening remarks, which was, yes, the jury could have considered other acts of contributory negligence, but what would they have been? Under the Illinois case law, we've cited, including the Seeger case, all that the plaintiff's passenger non-owners in a vehicle are responsible for is if they So yes, a jury could have, but what evidence, what proper evidence did the jury see about that? All they knew, the dangerous condition arose once the ISP chase began. So what available precautions could the plaintiffs have taken at that point? They didn't have any. So I don't believe this case was dictated by the evidence of contributory negligence. It was dictated by Defendant Ewing improperly getting to testify, opening the door to testimony that made him look like a good guy, that made him look like he had been exonerated for this crash when the exact opposite was true. That was the COPA violation, we argue. And then the non-admission... The what violation? Sorry, the COPA report initially was barred from... COPA is not a word. I'm sorry. Except maybe in COPA Cabana. I'm sorry, Your Honor. You need to use real English words. I apologize, Your Honor. The investigative agency that investigated Defendant Ewing's actions in this crash, it's the arm of the Chicago Police Department. It's an investigatory body that examines the defendant police officer's actions relative to this crash. I understand your point with the admission of the COPA report. I am concerned about our standard of review with that one, which is abuse of discretion. Can you address that? Yes, Your Honor. I do agree that it's an abuse of discretion standard, but I do believe that the court's discretion was abused because here, the district court in ruling on motions in limine said that plaintiff could not initially introduce the findings of the COPA report in its case... I wish you would use real legal words. Okay, I'm sorry, Your Honor. Real English words. I'll refer to this report as the investigative report. That's fine. The district court ruled that plaintiff could not introduce the investigative report in its case in chief, but that if defendant opened the door to that testimony by his own testimony or by eliciting testimony of others, then plaintiff could introduce the findings of that report. The door was opened six times in this case, three times by Defendant Ewing himself, where he testified to the effect that the crash had been characterized as unavoidable or non-preventable. Was that on cross-examination? Yes, but it was cross-examination that did not elicit that question in any way. The Plaintiff's Counsel was showing a slideshow of Chicago Police Department statistics on crashes and asking him general questions, and Defendant Ewing just threw it out there that, oh, this was classified as non-preventable. And the judge does address it, not in the way that the plaintiffs would want, right? And so the question for the Court of Appeals is, if there are a few different ways of addressing this situation, is the one that this district court took unreasonable? That's kind of where abusive discretion leaves us. Well, I think it was, Your Honor, because the evidence was so weighted. First of all, the district court judge acknowledged that this was a very close case on liability. So every single error that occurred was prejudicial and impacted the jury's verdict. The district court judge, when he made this ruling, he acknowledged that the investigative report was admissible under a hearsay exception. He acknowledged it was an admissible document. But then he decided it might be too confusing for the jury, so we're going to only let it in if the defendant opens the door. He did open the door multiple times. So the picture that was painted, combined with the other errors we assert, which are the allowance of joint enterprise, defense, and argument, and then also the Dead Man's Act testimony, combined to paint these three plaintiffs, passengers in the vehicle, as criminals. I understand. We may return to it during your rebuttal. Okay. Thank you, Your Honor. Thank you, counsel. Ms. Weiss. Ms. Weiss, please proceed. May it please the court. Jimmy Malone led police on a high-speed chase through a residential neighborhood, resulting in a collision with Officer Ewing's vehicle. Plaintiffs brought these consolidated cases, stating both federal and state law claims. After a seven-day trial, a jury found that Officer Ewing was not liable on any of these claims. The district court properly denied plaintiffs' motion for a new trial and entered judgment on the verdict. This court should affirm the district court's ruling for three reasons. First, it was appropriate for Officer Ewing to plead joint enterprise as an affirmative defense after plaintiffs raised claims of ordinary negligence. Second, the court reasonably excluded a report by the civilian office of police accountability at trial. And third, the events leading up to the collision were relevant to the plaintiffs' federal claims, so the Dead Man's Act did not apply. Turning to joint enterprise, after plaintiffs amended their complaints to include claims of ordinary negligence, Officer Ewing raised the affirmative defense of joint enterprise. This was entirely proper and not grounds for overturning the verdict. As an initial matter, the jury found that there was no joint enterprise here, so this defense did not affect how the joint enterprise inflamed the jury, but the evidence was admissible on other bases unrelated to joint enterprise. For example, plaintiffs argued that they were prejudiced by the admission of conversations inside of the Pontiac, surveillance footage of the robbery, and testimony about the robbery in pursuit. But this was all relevant to causation. First, it tended to show that Malone's conduct was the sole proximate cause of the collision because it is reasonably foreseeable that committing a robbery and evading police would result in a collision. And second, the evidence also tended to demonstrate that plaintiffs' lack of care for their own safety was a contributing cause of their injuries. Plaintiffs permitted Malone to drive and chose to stay in the car despite multiple chances to get out. Next, plaintiffs argued that the joint enterprise defense applies only to legal business enterprises, but no Illinois court has held that joint enterprise cannot apply to a criminal enterprise. In fact, the Illinois Supreme Court has held that joint enterprise applies any time there is an association to carry out a single project for profit. And as a matter of policy, plaintiffs should not be able to avoid the joint enterprise defense simply because their enterprise was criminal in nature. Plaintiffs rely in their briefs primarily on two cases. They offer Kinkowski for their assertion that joint enterprise applies only to legitimate business enterprises, but that was not the holding in Kinkowski. Rather, the court held that the parties were engaged in a partnership, which is a, quote, general business enterprise, rather than a joint venture, which is a single specific enterprise. Can I lift us out of this a little bit with a more broad question about the joint enterprise defense? One, I agree with you. The jury rejected it. That's clear in the verdict form. What, however, do you make of the jury's response to special question number four? The jury did find that the four men had a common purpose. And so what's your take on what that means about how they understood all this evidence coming in and how that affected their verdict? Yes, Your Honor. Well, even though the jury found that there was a common purpose, as you say, they did find that there was no joint enterprise. And the jury instructions, this is the docket, Arrington Docket 303. Oh, I'm sorry. Excuse me. This is Arrington Docket 303, it is. That if you find that joint enterprise has been proven, then any contributory fault you attribute to Jimmy Malone is also attributable to plaintiffs. But because there was no joint enterprise here, the jury is presumed to follow that instruction and would not have been able to impute that negligence to the plaintiffs in this case. So you think this common purpose answer that they've given is doing zero work here? Exactly. Because it was only one of the elements of joint enterprise and they found that overall, all of the elements of Let me also ask you this. Do you agree, I mean, looking at this record, a lot of attention was paid to the criminal actions of Malone and therefore the other men in the car. Do you see in any way that outsized attention was paid at the trial to Malone's criminal conduct? Excuse me, any way that outsized attention was paid to Malone and his criminal conduct? No, Your Honor. It was entirely appropriate to bring in that evidence of the criminal conduct and there's no indication that it was paid undue attention. That evidence went to the sole proximate cause of the collision and plaintiff's injuries. So it all bore on plaintiff's claims. Returning to the idea that the joint enterprise defense can apply to a criminal enterprise, as I stated, Pinkowski did not hold that joint enterprise cannot apply in light of a criminal enterprise. And the other case that plaintiffs rely on is Matasevic, which they argue, which they used to argue that Illinois courts have narrowed the joint enterprise to such an extent that it cannot apply here. But again, that's incorrect. Matasevic held that merely sharing trip expenses is not enough to turn a road trip into a joint enterprise. Rather, the parties must have some business purpose. And looking at the cases that Matasevic relied on there, business purpose simply means a commercial or profit-making purpose and not a social purpose. So it did not hold that joint enterprise cannot be criminal in nature. And in any event, Pinkowski and Matasevic were issued by appellate courts and the Illinois Supreme Court has issued controlling precedent in both Carroll v. Caldwell and Grubb v. the Illinois Terminal Company that a joint enterprise applies when there is a single project for profit-making purposes. And plainly a robbery is such a project. Turning to the Civilian Office of Police Accountability report, the district court properly exercised its discretion in excluding this report under Rule 403. There, you know, the district court had a number of calls to make at the outset. After it's referenced several times, though, why is it not an abuse of discretion for the district court to continue to keep it out? Your Honor, Officer Ewing did not reference the report several times. He said that the department had determined that this was an unpreventable collision, referring to the Chicago Police Department and not the Civilian Office of Police Accountability. That office is a separate branch. It's an investigatory branch and its purpose is to recommend discipline when officers commit certain violations. So he never said that that office found that this was an unpreventable incident. And in any event, it is completely within the district court's discretion to determine which curative method is appropriate. And here the court found that admitting the Civilian Office of Police Accountability report in its entirety would not have been a commensatory response and instead offered limiting instructions or paused proceedings in order to instruct witnesses not to testify as to that report. And again, that was reasonable and not an This is a state law competency rule. It does not control in federal court if the testimony at issue is relevant to a federal claim. The rule says that no one with a direct interest in a case may testify about conversations with the decedent or events that took place in the decedent's presence. And here that means conversations between Arrington and the others within the Pontiac or the events leading up to the collision. But that evidence is relevant to plaintiff's federal claim of excessive force. To prove excessive force, a plaintiff must demonstrate that the use of force was the proximate cause of her injuries. And as we've said here, Malone's conduct in committing the robbery and subsequently evading the police was the sole proximate cause of plaintiff's injuries. Therefore, Malone's conversations with plaintiffs and his actions leading up to the collision were relevant to the federal claim. The jury could have determined that Officer Ewing's conduct was not the proximate cause of plaintiff's injuries, which would have defeated the federal claim. And therefore, it was appropriate to admit this evidence under Rule 601. For these reasons, we ask the court to affirm the judgment of the district court and we rest on their briefs. Thank you. Thank you, Counsel. Anything further, Ms. Bartolucci? I just want to address a couple of counsel's comments. First, there was never an argument or a jury instruction in this case that Jimmy Malone's conduct was the sole proximate cause of the case. So that's inaccurate. It was always argued that he contributed to causing the accident and that his contributory negligence had to be imputed to the plaintiffs. I'd like to also address counsel's comments that the events leading to the crash were somehow relevant. The only thing that was relevant on the claims against Defendant Ewing were his mindset, what was objectively reasonable from his perspective on the 1983 claim, and then whether he acted willfully and wantonly or negligently. What happened in the Tinley Park parking lot has nothing to do with any of those issues. I also want to get back to Judge Easterbrook's questioning about the legal premise or support for our arguments because it is very important, and Your Honors as well, about the standard of review. Two of the three issues we've raised should be governed by a de novo standard of review because they relate to either the legal underpinnings of the joint enterprise defense, which initially at the pleading stage is a legal issue. It was also a legal issue on the Rule 50 motion for judgment as a matter of law. And as we've argued in our brief, it also should be a legal issue that was evaluated before jury instructions were tendered. Plaintiffs' counsel consistently objected to that theory and any instructions being given on that theory. So we believe that's a legal issue that should be judged under a de novo standard of review. It was a legally erroneous legal theory that should never have gotten to the jury, and the admission of evidence was either legally erroneous or based on an inaccurate... My question had nothing to do with the standard of review and everything to do with rules of Illinois law. What source should I look to to find the rules of law that govern your argument about the joint enterprise theory? Oh, thank you, Your Honor, for clarifying. While the Illinois pattern jury instructions are one place, they do... They are not a rule of law. Okay. They reflect decisions by Illinois courts. Understood, Your Honor. So we've cited several cases, including Palmer v. Miller, Supreme Court precedent, Seager case, which says the joint enterprise doctrine is disfavored, it's being winnowed down, it should be narrowly construed, should not be expanded. And even those cases, Your Honor, say that the joint enterprise concepts and the imputed negligence concepts... Is there some Illinois case with roughly similar facts where an Illinois court has held that the evidence about the joint enterprise theory should not be admitted? Your Honor, I have not located one that involved a criminal enterprise as the purported joint enterprise. Criminal versus civil. Just roughly similar facts. That's the problem. There aren't very many where the joint enterprise defense was even asserted. The civil cases where it's discussed said that the general rule is non-owner passengers have only duties with respect to their own actions and inactions. They can never be held liable. The Seager case, Palmer, we do recite significant Illinois authority that says passengers, non-owner passengers in a vehicle are responsible only for their own negligence. They can never be imputed with the driver's negligence if they're not an owner and they have no right to control the driver. So yes, there's decades of Illinois precedent on that and we cite several cases. Then there are cases that also say even if you're going to look at the joint enterprise doctrine, there has to be certain elements. And here the district court judge literally ignored the elements as set forth in Illinois case law and crafted his own element, a mutual profit-seeking endeavor to make that fit a criminal case, a criminal undertaking. He may as well have said accomplices or you were all agreeing to commit a robbery because it was that far afield from the civil context. So there's plenty of Illinois case that says no negligence of a driver can be imputed to a passenger unless the passenger is an owner and has a right to control the driver. Here there was no co-ownership of the vehicle. So the concept shouldn't have even come up and there's vast Illinois case law on that. And there's certainly no case that says it can be applied onto a criminal enterprise. I mean, the evidence here painted the plaintiffs as accomplices, not passengers in the vehicle. And that... Thank you, counsel. Thank you. The case is taken under advisement.